John L. Smaha, Esq. (SBN 95855)
Gustavo E. Bravo, Esq. (SBN 218752)
**SMAHA LAW GROUP**
3990 Old Town Avenue, A-103
San Diego, CA 92110
(619) 688-1557
Jsmaha@smaha.com

Attorneys for Plaintiff, Partners Alliance Corporation

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PARTNERS ALLIANCE CORPORATION, a California Corporation, and PORTFOLIO SERVICES LIMITED, INC., a Texas Corporation; | Case No.: 3:24-cv-01222-H-DDL |
| Plaintiffs, | **PLAINTIFF, PARTNERS ALLIANCE CORPORATION'S FIRST AMENDED COMPLAINT FOR:** |
| vs. | 1. **DECLARATORY RELIEF;** |
| ALLY BANK, a Utah Corporation; CAPITAL ONE FINANCIAL CORPORATION, a Delaware Corporation; CITIZENS BANK, NA, a Delaware Corporation; FIFTH THIRD BANK, NA, an Ohio Corporation; FLAGSHIP CREDIT ACCEPTANCE LLC, a Delaware Limited Liability Company; KINECTA FEDERAL CREDIT UNION, a federally chartered credit union; WELLS FARGO & COMPANY, a Delaware Corporation; and Does 1 through 20, | 2. **INTENTINOAL INTERFERENCE WITH CONTRACTUAL RELATIONS;** <br> 3. **NEGLIGENT INTERFERENCE WITH CONTRACTUAL RELATIONS; AND,** <br> 4. **INJUNCTIVE RELIEF** |
| Defendants. | |

Comes now Plaintiffs Partner's Alliance Corporation ("PAC"), a California Corporation, and PORTFOLIO SERVICES LIMITED, INC., a Texas Corporation ("Portfolio"; Collectively referred to as "Plaintiffs"), by and through their attorneys, and brings this action for declaratory relief and injunctive relief against Defendants Ally Bank, a Utah Corporation ("Ally"), Capital One Financial Corporation, a Delaware Corporation ("Capital One"), Citizens Bank, NA, a

1  Delaware Corporation and National Association ("Citizens"), Fifth Third Bank, NA, an Ohio

2  Corporation and National Association ("Fifth Third"), Flagship Credit Acceptance LLC, a

3  Delaware Limited liability Company ("Flagship") and Wells Fargo & Company, a Delaware

4  Corporation ("Wells Fargo"; collectively, each of the defendants are referred to as the

5  "Defendants").  Plaintiffs further allege that Defendants, and each of them, have intentionally

6  and/or negligently interfered with the Plaintiffs' contractual relationships.  Plaintiffs allege as

7  follows:

8  **INTRODUCTION**

9      1.      This action arises from the Defendants' unconstitutional interpretation and

10  application of California AB 2311 to apply it retroactively to GAP Waivers or Addendum

11  contracts entered into before January 1, 2023, but canceled on or after January 1, 2023, thus

12  resulting in Defendants forcing automobile dealerships to refuse to allow the payment of over a

13  million dollars in contractual cancellation fees to PAC and Portfolio.

14      2.      Plaintiff, PAC is a corporation, validly formed and existing in the State of

15  California and is doing business within this judicial district.

16      3.      Plaintiff, Portfolio is a corporation, validly formed in the state of Texas,

17  authorized to do business in the state of California and is doing business within this judicial

18  district.

19      4.      Defendant, Ally, is a corporation validly formed in the state of Utah, authorized to

20  do business in the State of California and is doing business within this judicial district.

21      5.      Defendant, Capital One, is a corporation, validly formed in the state of Delaware,

22  authorized to do business in the state of California and is doing business within this judicial

23  district.

24      6.      Defendant, Citizens, is a corporation and a national association, validly formed in

25  the state of Delaware, authorized to do business in the state of California and is doing business

26  within this judicial district.

27  ///

28  ///

7.      Defendant, Fifth Third, is a corporation and a national association, validly formed in the state of Ohio, authorized to do business in the state of California and is doing business within this judicial district.

8.      Defendant, Flagship, is a limited liability company, validly formed in the state of Delaware, authorized to do business in the state of California and is doing business within this judicial district.

9.      Defendant, Kinecta, is a federally chartered credit union, validly formed and operating in the state of California, authorized to do business in the state of California and is doing business within this judicial district.

10.     Defendant, Wells Fargo, is a corporation and a national association, validly formed in the state of Delaware, authorized to do business in the state of California and is doing business within this judicial district.

11.     The true names and capacities of the Doe Defendants sued herein as DOES 1 through 20, inclusive, whether individual, corporate, associate, partnership, or otherwise, are unknown to Plaintiffs, who therefore sue said DOES by such fictitious names pursuant to *Code of Civil Procedure* §474. Each of said DOES is responsible in some manner for the events herein referred to, causing injury and damages proximately thereby, to Plaintiffs as hereinafter alleged. Plaintiffs will seek leave to amend this complaint to state the true names and capacities when the same have been ascertained.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction over the Defendants as they reside in the State of California and/or conduct business in the State of California within this judicial district.

13.     This Court has subject matter jurisdiction over this action because the amount of relief sought in this action exceeds the statutory minimum and the declaratory relief cause of action seeks interpretation of California Law and Federal Law.  Further, Defendants removed this action to the Federal Court based on federal question jurisdiction pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446.

///

14.     Venue is proper in the County of San Diego pursuant to California Code of Civil Procedure § 392 and § 393 because this action arises out of contracts to be performed in the County of San Diego, and because this County is where these disputes arose and where the transactions occurred.

**FACTUAL ALLEGATIONS**

15.     California AB 2311 was enacted on September 12, 2022 and became effective January 1, 2023 ("AB 2311").  AB 2311 amended certain provisions of California Civil Code sections 2981-2983.3 to regulate the origination, servicing and termination of two-party GAP Waivers or GAP Addendums sold in connection with conditional lease and sales contracts for motor vehicles.  Prior to the enactment of AB 2311, the State of California did not generally regulate GAP Waivers or GAP Addendums except to provide that neither is considered insurance and therefore not governed by the insurance code.  Rather, all GAP Waivers and GAP Addendums were simply operative and enforceable as written contracts.  Of particular application to the within matter, AB 2311 added Section 2982.12 to the Civil Code including paragraph 2982.12(b)(5) which reads:

"(5) A cancellation fee, termination fee, or similar fee shall not be assessed in connection with the termination of a guaranteed asset protection waiver."

16.     PAC and Portfolio have been in this industry for many years and act primarily as GAP Addendum provider(s) and administrator(s).  In furtherance thereof, PAC and Portfolio have over the years entered into numerous written Dealer Agreements with automobile dealers in California ("Dealerships").  A form of a Dealer Agreement is attached hereto as Exhibit A and made a part hereof for illustrative purposes.  Pursuant to the Dealer Agreements, each Dealership was authorized to offer consumers various products in accordance with PAC and Portfolio's GAP programs. A GAP Waiver or GAP Addendum (also sometimes referred to as a guaranteed asset protection waiver) is an add-on product that is sold, by the dealership, to a consumer such that if their vehicle is financed and is declared a total loss, that the consumer would be relieved of any legal liability for any deficiency between the money owed on their vehicle purchase financing based on the actual value of the subject vehicle on the date of the total loss, even if the

actual value of the vehicle was less than what was otherwise owed.  In each case, the ultimate lender would receive a check from the GAP administrator for any such deficiency amount. These amounts are paid from secondary insurance arranged by the GAP Administrator as part of the sale of a GAP Addendum.  These GAP Waivers or GAP Addendums are made a part of the vehicle lease and/or loan agreements.  The vehicle leases and/or loan agreements are then assigned by the dealerships to banks or other lenders.

17.     In each transaction, PAC or Portfolio would sell a GAP Addendum to the Dealership for a contracted price.  The Dealership would then sell that GAP Addendum to a consumer at a price which included a negotiated mark up to the Dealership.  The finance contract and GAP Addendum executed by the Dealership and the consumer would then be assigned in writing to lenders including each of the Defendants.  An Example of such an assignment is attached hereto as Exhibit B for illustrative purposes.

18.     In the period of up to eight years prior to January 1, 2023, Dealerships under contract with PAC and/or Portfolio sold hundreds of thousands of GAP Addendums with consumers related to their purchase of a vehicle in California ("GAP Addendums"). These GAP Addendums name PAC or Portfolio as the administrator of the GAP Addendum. A form of such a GAP Addendum is attached hereto as Exhibit C and made a part hereof for illustrative purposes.  Pursuant to the terms of the GAP Addendum upon early cancellation of the GAP Addendum, PAC or Portfolio would calculate the partial refund (in part for the GAP Addendum and in part for the markup charged by the Dealerships), and for its services Plaintiffs, prior to January 1, 2023, received in part an administrative cancellation fee of approximately $50.00 for each early cancellation under the terms of the GAP Addendums and under the prevailing business practice between the Plaintiffs, the Dealerships and the lenders, including Defendants, in over a hundred thousand early cancellations.

19.     In a typical vehicle finance transaction, the automobile dealer, through their own agreement with a lender, assigns the finance contract to the lender.  The lender then becomes legally obligated to perform under the finance agreement entered into with the consumer including honoring the terms of any such GAP Addendums naming PAC or Portfolio as the GAP

1    Administrator.  As of the date of the Plaintiffs' original complaint, there were thousands of
2    known uncancelled GAP Addendums assigned to various of the Defendants where either
3    Portfolio or PAC is named as the GAP Administrator.

4         20.    After the effective date of AB 2311, the Defendants, and each of them, began
5    applying AB 2311 improperly and instructed the Dealerships that the payment of cancellation
6    fees for GAP Addendums entered into before January 1, 2023 but cancelled thereafter would not
7    be allowed.  Thus, foregoing the cancellation fees owed to PAC and/or Portfolio and other
8    administrators.  In many instances, Dealerships were back charged by the Defendants for any
9    such cancellation fees deducted from amounts owing to the consumer.

10        21.    In taking this action, the Defendants, and each of them, have unconstitutionally
11   interpreted AB 2311 to apply the law retroactively to GAP Addendums sold to consumers prior
12   to January 1, 2023 but cancelled after January 1, 2023 to not allow the payment of contracted for
13   cancellation fees.  The Dealerships, as a result thereof, have demanded that PAC and/or Portfolio
14   reimburse them for any back-charged cancellation fees. PAC and Portfolio have paid the
15   Dealerships or have not deducted cancellation fees when they were owed because their
16   continuing relationships with the Dealerships and/or the Defendants were being threatened to be
17   terminated if the cancellation fees were paid to either of the Plaintiffs and the Dealerships were
18   not reimbursed for back charges.

19        22.    GAP Addendums entered into on or after January 1, 2023, pursuant to the terms
20   of AB2311 do not include cancellation fees but are priced differently to take the new law into
21   consideration.  Nothing in AB 2311, including its legislative history, mentioned the concept of
22   the retroactive application of the law to GAP Addendums sold prior to January 1, 2023.  When
23   not applied retroactively all pre-January 1, 2023 GAP Addendums would simply be treated as
24   binding written contracts on all parties per their terms.  Early cancellation fees would be allowed.
25   This interpretation is consistent with both California and Federal Constitutional Law that
26   prohibits the legislature from passing laws that alter existing written contracts.

27   ///
28   ///

FIRST AMENDED COMPLAINT

# FIRST CAUSE OF ACTION
(Declaratory Relief)
(By All Plaintiffs as Against all Defendants)

23.    PAC and Portfolio hereby incorporate paragraphs 1 through 22, inclusive of the complaint as though fully set forth and re-alleged herein.

24.    PAC alleges that Ally, Capital One, Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells Fargo, are wrongfully applying AB 2311 retroactively to pre-January 1, 2023 GAP Addendums to deny PAC and Portfolio early cancellation fees owed to them. This interpretation is either incorrect or would amount to an unconstitutional application of AB2311 under both federal and state constitutional law.   Plaintiffs contend that if read this way, AB 2311 would amount to unconstitutional governmental interference with a private agreement prohibited by the Contracts Clause of the California Constitution (Article 1 – Declaration of Rights section 9) and the Contracts Clause provided in Article I, Section 10, Clause 1 of the U.S. Constitution.

25.    On the other hand, Defendants Ally, Capital One, Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells Fargo and each of them contend that AB 2311 must be retroactively applied to GAP Addendums sold prior to January 1, 2023 but cancelled thereafter. The Defendants contend that such an application is both mandated by AB 2311 and is a constitutional reading of AB 2311.

26.    Thus, an actual controversy has arisen between PAC and Portfolio on the one hand and Defendants on the other.  PAC and Portfolio assert that Defendants' retroactive application of AB 2311 deprives them of contractual cancellation fees in many thousands of instances.  Defendants assert that the law as written applies to properly deny cancellation fees on any GAP Addendum cancellation made on or after January 1, 2023 regardless of whether the GAP Addendum was sold prior to January 1, 2023.

27.    A judicial declaration is necessary to resolve this controversy as it materially affects the receipt of contracted cancellation fees and the business relationships, and course of dealing between the Parties and the Dealerships.  Such a declaration is also necessary to determine whether the Defendants have either intentionally or negligently interfered in the business relationships of PAC and Portfolio with the various Dealerships and as a result thereof

1    would be liable to PAC and/or Portfolio for damages.

2    **SECOND CAUSE OF ACTION**
     (Intentional Interference with Contractual Relations)
3    (By All Plaintiffs as Against all Defendants)

4    28.    PAC and Portfolio hereby incorporate paragraphs 1 through 27, inclusive of the

5    complaint as though fully set forth and realleged herein.

6    29.    PAC and Portfolio have numerous Dealer Agreements with automobile

7    dealerships authorizing the dealerships to sell GAP Addendum or GAP Waivers to consumers

8    through programs offered by PAC and Portfolio.  Each of these such Dealer Agreements will be

9    subject to proof at the time of trial.  Under these Dealer Agreements, the automobile dealerships

10   sell the GAP Addendums to consumers with PAC and/or Portfolio named as the administrator of

11   the GAP Addendums.  These GAP Addendums were each individually assigned to the various

12   Defendants.  Such assignments shall be subject to proof at the time of trial.  By and through the

13   Dealer Agreements, the GAP Addendums and the long-standing business customs and practices

14   between the Dealerships, Plaintiffs and the Defendants, the administrators, including PAC and

15   Portfolio, received, among other benefits, a $50 cancellation fee in thousands of cases where the

16   GAP Addendum was cancelled prior to January 1, 2023.

17   30.    Defendants, and each of them, were aware of the Dealer Agreements and the GAP

18   Addendums as the Defendants are assigned the GAP Addendums as part of the financing for

19   each sale or lease agreement entered into between the Dealerships and consumers purchasing or

20   leasing cars from Dealerships.

21   31.    Each applicable pre-January 1, 2023 GAP Addendum, assigned to Ally, Capital

22   One, Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells Fargo that named PAC or

23   Portfolio as the GAP Administrator allowed for, where appropriate, a cancellation fee of

24   approximately $50.00 for early cancellation of the GAP Addendums.

25   32.    Ally, Capital One, Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells

26   Fargo, and each of them, knew of the express terms of numerous pre-January 1, 2023 GAP

27   Addendums and Dealer Agreements, including the cancellation fees which were being paid to

28   either PAC or Portfolio when calculating a refund due for such cancellation. Ally, Capital One,

1   Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells Fargo, and each of them, intentionally

2   interfered with PAC and/or Portfolio's contractual relations with each of the Dealerships when

3   said Defendants instructed the Dealerships on or after January 1, 2023 and continuing thereafter

4   to the present that cancellation fees would not be allowed on post January 1, 2023 early

5   cancellations of GAP Addendums which were sold prior to January 1, 2023. By Defendants'

6   interference with the Plaintiffs' contractual relations with the Dealerships, PAC and/or Portfolio

7   have been damaged in each instance where the Plaintiffs have been prohibited from receiving

8   cancellation fees for each cancellation of a GAP Addendum that was sold prior to January 1,

9   2023 but cancelled after January 1, 2023.  The amount of such losses exceeds $800,000 subject

10   to proof at the time of trial as the full extent of losses are still unknown at this time.  As of

11   November 1, 2024, PAC has, by itself, suffered damages in the amount of $602,797 based on

12   cancellation fees not received through that date.  This amount will only increase.

13         33.    Defendants knew that their actions were disrupting and interfering with the Dealer

14   Agreements and the GAP Addendums based on communications between the Plaintiffs, the

15   Defendants and the Dealerships between January 1, 2023 and the present.

16         34.    The Defendants' conduct in relation to their interpretation of AB 2311 and their

17   directions to Dealerships that the Defendants would no longer honor the cancellation fees due

18   under the GAP Addendums or GAP Waivers has been a substantial factor in causing the

19   Plaintiffs' damages enumerated herein above subject to proof at the time of trial.

20
21

**THIRD CAUSE OF ACTION**
(Negligent Interference with Contractual Relations)
(By All Plaintiffs as Against all Defendants)

22         35.    PAC and Portfolio hereby incorporate paragraphs 1 through 34, inclusive of the

23   complaint as though fully set forth and realleged herein.

24         36.    PAC and Portfolio have numerous Dealer Agreements with automobile

25   dealerships authorizing the dealerships to sell GAP Addendum or GAP Waivers to consumers

26   through programs offered by PAC and Portfolio.  Each of these such Dealer Agreements will be

27   subject to proof at the time of trial.  Under these Dealer Agreements, the automobile dealerships

28   sell the GAP Addendums to consumers with PAC and/or Portfolio named as the administrator of

9
FIRST AMENDED COMPLAINT

the GAP Addendums. These GAP Addendums were each assigned to the Defendants. Such assumption shall be subject to proof at the time of trial. By and through the Dealer Agreements, the GAP Addendums and the long-standing business customs and practices between the Dealerships, Plaintiffs and the Defendants, the administrators, including PAC and Portfolio, received, among other benefits, an approximate $50 cancellation fee in thousands of cases where the GAP Addendum was cancelled prior to January 1, 2023, where contractually appropriate.

37. Defendants were aware, or should have been aware, of the Dealer Agreements and the GAP Addendums as the Defendants are assigned the GAP Addendums as part of the financing for each sale or lease agreement entered into between the Dealerships and consumers purchasing or leasing cars from Dealerships.

38. Each applicable pre-January 1, 2023 GAP Addendum, assigned to Ally, Capital One, Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells Fargo that named PAC or Portfolio as the GAP Administrator allowed for, where appropriate, a cancellation fee of approximately $50.00 for early cancellation of the GAP Addendums.

39. Ally, Capital One, Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells Fargo, and each of them, knew, or should have known, of the express terms of numerous pre-January 1, 2023 GAP Addendums and Dealer Agreements, including the cancellation fees which were being paid to either PAC or Portfolio when calculating a refund due for such cancellation. Ally, Capital One, Citizens Bank, Fifth Third, Flagship, Kinecta and/or Wells Fargo, and each of them, negligently interfered with PAC and/or Portfolio's contractual and/or potential economic relations with each of the Dealerships when said Defendants, on or after January 1, 2023 to the present, negligently instructed the Dealerships that cancellation fees would not be allowed on post January 1, 2023 early cancellations of GAP Addendums sold prior to January 1, 2023. By Defendants' negligent interference with the Plaintiffs' contractual relations with the Dealerships, PAC and/or Portfolio have been damaged in each instance where the Plaintiffs have been prohibited from receiving cancellation fees for each cancellation of a GAP Addendum that was sold prior to January 1, 2023 but cancelled after January 1, 2023. The amount of such losses exceeds $800,000 subject to proof at the time of trial as the full extent of losses are still unknown

at this time. As of November 1, 2024, PAC has, by itself, suffered damages in the amount of $602,797 based on cancellation fees not received through that date.  This amount will only increase.

40.    Defendants knew, or should have known, that their actions and their failure to act with reasonable care would disrupt the Dealer Agreements and the GAP Addendums as between the Plaintiffs and the Dealerships based on communications had between the Defendants, Plaintiffs and various of the Dealerships.

41.    Defendants failed to act with reasonable care and engaged in wrongful conduct in their interpretation of AB 2311 and their directions to Dealerships that the Defendants would no longer honor the cancellation fees due under the GAP Addendums or GAP Waivers.

42.    The Defendants' negligent conduct in relation to their interpretation of AB 2311 and their directions to dealerships that the Defendants would no longer honor the cancellation fees due under the GAP Addendums or GAP Waivers has been a substantial factor in causing the Plaintiffs' damages enumerated herein above.

<u>**FOURTH CAUE OF ACTION**</u>
(Injunction)
(By All Plaintiffs as Against all Defendants)

43.    PAC and Portfolio hereby incorporate paragraphs 1 through 42, inclusive of the complaint as though fully set forth and realleged herein.

44.    PAC and Portfolio are being harmed on a daily basis by the unconstitutional application of AB 2311 by the Defendants to deny PAC and Portfolio contractual cancellation fees on post January 1, 2023 early terminations of PAC Addendums entered into before January 1, 2023 which have been assigned to Defendants where PAC and/or Portfolio are named as the GAP Administrator.

45.    Unless Defendants are preliminary and permanently enjoined from their wrongful conduct, PAC and Portfolio will be irreparably harmed as contractually, PAC and Portfolio will be required to perform work under their Dealer Agreements to properly cancel GAP Addendums without the contractual compensation for performing such work.

//

<u>**PRAYER FOR DAMAGES AND INJUNCTIVE RELIEF**</u>

**WHEREFORE, PAC and Portfolio pray for judgment against Defendants as follows:**

1.     For a judicial declaration that AB 2311 does not apply to disallow early cancellation fees for GAP Addendums sold prior to January 1, 2023 but cancelled on or after January 1, 2023.  Such declaration may be made based either on the interpretation of AB 2311 or by determining that a retroactive interpretation of AB 2311 would result in an unconstitutional application of the law.

2.     For a preliminary and permanent injunction enjoining Defendants, and each of them, from directing the Dealerships to apply AB 2311 retroactively to deny PAC and/or Portfolio cancellation fees on GAP Addendums contractually entered into prior to January 1, 2023, when such GAP Addendum is cancelled early on or after January 1, 2023.

3.     For compensatory damages according to proof at time of trial either in the following minimum amounts as against each defendant together with prejudgment interest thereon or such greater or larger amount according to proof at the time of trial:

    a.  In favor of PAC and against Ally for a minimum of $141,174;

    b.  In favor of Portfolio and against Ally for a minimum of $107,600;

    c.  In favor of PAC and against Capital One for a minimum of $305,589;

    d.  In favor of Portfolio and against Capital for a minimum of $277,250;

    e.  In favor of PAC and against Citizens Bank for a minimum of $5,732;

    f.  In favor of PAC and against Fifth Third for a minimum of $9,971;

    g.  In favor of PAC and against Flagship for a minimum of $12,612;

    h.  In favor of PAC and against Kinecta for a minimum of $20,027;

    i.  In favor of PAC and against Wells Fargo for a minimum of $107,692; and,

    j.  In favor of Portfolio and against Wells Fargo for a minimum of $133,100.

4.     For other and further damages proximately caused by Defendants' intentional interference or negligent interference with Plaintiffs' rights, according to proof at the time of trial;

5.     For costs of suit herein incurred; and,

**FIRST AMENDED COMPLAINT**

6.      For such other and further relief as the court deems just and proper.


Dated: November 27, 2024                    Respectfully submitted,



_____
John L. Smaha, Esq.
Gustavo E. Bravo, Esq.
Attorneys for Plaintiffs, Partner Alliance
Corporation and

FIRST AMENDED COMPLAINT

# EXHIBIT A

# Partners Alliance Corporation

P.O. Box 1630
Poway, CA 92074-1630
1-800-970-3302 - Fax (858) 513-9224

### DEALER AGREEMENT

This Agreement is between Partners Alliance Corporation, (PAC) and _____, (Dealer). Dealer requests that PAC authorize Dealer's participation in the Guaranteed Auto Protection Program (GAP Program) on a non-exclusive basis and make its program facilities available to Dealer; and PAC is willing to authorize Dealer to participate in the GAP Program and to make its program facilities available to Dealer subject to the terms and conditions of this agreement; and Dealer promises to participate in the GAP Program and to adhere to the terms and conditions of this agreement and to perform the services specified herein;

Now, in consideration of their mutual promises, sufficiency of which is hereby agreed, PAC and Dealer agree as follows:
Dealer is authorized to offer vehicle lease and loan agreement waivers under the GAP Program to its customers, subject to the terms and conditions of the Agreement and any and all applicable laws. Dealer shall only enter into such agreements (1) on the date which a subject vehicle is leased or sold, as the case may be, and (2) using the form of GAP Addendum Waiver (Contract) as PAC will supply to Dealer.  Dealer agrees to only sell contracts which meet the criteria as specified in the GAP Addendum Waiver (Contract) that is provided to the Dealer.  Contracts which are not acceptable shall be returned to the Dealer and voided.

Dealer agrees to remit to PAC as per addendum 1 for each Contract issued under the GAP Program, or such other sum as PAC may advise Dealer in writing from time to time. **Customer's primary policy deductible will be covered up to $_____ by waivers issued in this state by Dealer.** Dealer is empowered to collect, receive and receipt for amounts due on all Contracts entered into by Dealer.  All such amounts received by Dealer and due PAC shall be held by Dealer in a fiduciary capacity as trustee for PAC until remitted to and received by PAC.  Dealer agrees to return all sums collected for voided or canceled contracts to the lien holder or the purchaser as their interests call for.

PAC, to cover loss Dealer may incur as a result of the liability limitation contained in Contracts issued by Dealer, shall procure insurance on behalf of Dealer. Dealer shall be named as the insured party under any policy or contract for such insurance.  Any assignee of Dealer under any such Contract shall be an additional insured under such policy or contract.  Dealer agrees to accept that payment under such policy of insurance as full satisfaction of any loss Dealer may incur as a result of the liability limitation contained in Contracts issued by Dealer.  In the event of assignment by Dealer of all or any part of its rights, duties or liabilities under any lease or loan agreement for which there is a Contract in effect, Dealer shall cause the assignee thereof to assume the waiver as part of the assignment.  In the event of assignment by Dealer, all GAP proceeds will be paid directly to the assignee.

**Reporting Register** By no later than last day of the month following the end of the calendar month in which the contracts were originated, Dealer shall deliver to PAC a reporting register on the form supplied by PAC, which shall include, among other things: (1) a list of all Contracts issued by Dealer in the immediately preceding month's business (the reporting period); (2) a copy of each of the contracts issued in the reporting period; (3) a check for the money due PAC for contracts issued by Dealer during such period, and (4) a list of all Contracts issued at any time by Dealer and voided during such period. PAC shall not be responsible for claims arising under any contract(s) submitted to PAC after sixty (60) days from the effective date of the contract(s) in question, where a claim incurred prior to the dealer submitting contract(s). Dealer, in such event, shall indemnify, defend and hold PAC and its insurers free and harmless from any claim, cause of action, damage, cost, or expense, including attorney's fees and costs, arising or resulting there from. Contract(s) reported after 75 days will be subject to a $30.00 late reporting fee.

**Records** During the term of this Agreement, Dealer agrees to maintain accurate and current records relating to its participation in the GAP Program and its sale of Contracts.  These records shall be made immediately available for examination by PAC at such time or times, as PAC desires during Dealer's regular business hours.  Dealer shall be responsible for the correctness of all information relating to all Contracts, and shall assist PAC in correcting any errors, which arise.

**Losses** PAC shall not be responsible for processing any loss report involving a loss: (1) not covered under a Contract.

**Cancellation** The Gap policy or waiver may be flat cancelled within 30 days of the origination date. Cancellations after 30 days will be refunded by Pro Rata or by a method as determined by state law. In the event of a total loss to the covered vehicle, the policy or waiver will be deemed as fully earned and, therefore, no refund will be due.

**Repossession** In the event that a vehicle is repossessed, the GAP agreement ceases as of the time of actual physical repossession.

**General Performance** (a) Dealer agrees to exercise care and due diligence in the performance of all its duties hereunder.  Dealer further agrees to abide by any procedures, rules, regulations or other guidelines relating to the GAP Program as may be announced to Dealers by PAC from time to time. (b) Subject to the terms of this Agreement, PAC agrees to cooperate fully with Dealer and to render all assistance reasonably necessary in order to enable Dealer to carry out its obligations hereunder.  All administrative forms relating to the GAP Program (including Contract forms, rate cards and marketing materials) reasonably necessary for Dealer to conduct the business of entering into Contracts hereunder shall be furnished to Dealer by PAC or on its behalf.  (c) Dealer is not authorized and is expressly forbidden, without the prior written approval of PAC to (1) incur any indebtedness or liability on behalf of PAC; (2) publish, issue or circulate any advertisement or Literature relating to PAC or the GAP Program; (3) enter into any legal proceeding in

Dealer Agreement 02/2017

connection with PAC business; (4) alter or discharge any Contract; (5) waive or modify any term, condition or limitation of any Contract or agreement under any PAC program, extend the time of payment or waive any payment under any Contract, or bind PAC in reinstatement of any canceled Contract; or (6) possess or exercise any authority on behalf of PAC other than that expressly provided for in this Agreement. (d) Dealer shall act under this agreement as an independent Contractor, and nothing herein shall be construed to create an employer/employee relationship.

**Expenses** Except for the cost of administrative forms supplied by or on behalf of PAC pursuant to paragraph (b) of the section dealing with General Performance, PAC shall not be liable for any expense of Dealer including, without limitation, the cost of any rentals, transportation, postage, other advertising, employee costs, local license fees or sales tax.

**Legal Compliance:  Indemnification** Dealer agrees to comply with all applicable laws and lawful regulations of duly constituted regulatory authorities, and to hold PAC harmless from any claim, liability, damage, loss or expense (including attorney's fees) resulting from any failure of Dealer to so comply or resulting from any act or omission by Dealer or its employees, if any.

**Arbitration and Applicable Law** Any dispute arising in respect to the terms, conditions or effects of this Agreement shall be settled by arbitration as the sole remedy available to all parties hereto.  Arbitration shall take place in San Diego County, California.  The commercial arbitration rules of the American Arbitration Association will apply.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of California.

**Termination** (a) This Agreement may be terminated at any time by either party hereto upon thirty (30) days written notice to the other parties at the appropriate address specified above.  Notwithstanding the foregoing, this Agreement may be terminated immediately by PAC if the Dealer violates any applicable law or lawful regulation of any duly constituted authority, or fails to fulfill any of its obligations under this Agreement. (b) In the event that this Agreement is terminated as provided herein, Dealer shall promptly collect and, immediately thereafter, forward to such person as PAC shall designate in writing (1) all Contract forms, administrative forms and other written materials supplied by PAC to Dealer pursuant to this Agreement other than executed forms of Contracts then in effect; (2) all other written materials in the possession or control of Dealer; (3) all duplicate copies of any of the above forms and materials in the possession or control of Dealer.

**Term** This Agreement shall be effective as of the date indicated below and shall remain in effect until terminated as provided herein.

**Notices** All notices required to be given under the terms of this Agreement shall be given in writing and shall be sent by United States registered or certified mail, postage prepaid, return receipt requested, addressed to the party to be notified at its address specified above.

**Waiver or Modification** No forbearance, neglect or other failure of PAC to enforce or require strict compliance with any term and/or condition of this Agreement, or to exercise any right of termination hereunder, shall not constitute a waiver of any such term, condition or right, nor shall it constitute a waiver of any other term, condition or right.  No waiver, amendment or modification of this Agreement shall be valid unless made in a written instrument executed by all parties hereto.

**Assignment** Dealer shall not assign or transfer any right or benefit under this Agreement, either in whole or in part, without the prior written consent of PAC.  Subject to the foregoing, this Agreement shall be binding upon and shall inure to the benefit of and shall be enforceable by the heirs, legal representatives, successors and assigns of the parties hereto.

**Entire Agreement** This Agreement shall constitute the entire agreement by, of and between the parties hereto, and all previous contracts, agreements, and understandings between the parties hereto, whether oral or written, shall be of no further force and effect.

**IN WITNESS WHEREOF,** the parties have executed this Agreement as of the date shown below.

Date: _____

Dealer: _____        **Partners Alliance Corporation**

By: _____          By_____
          (Signature)                                      (Signature)

_____          _____
     (Print or Type Name)                              (Print or Type Name)

_____          _____
     (Print or Type Title)                              (Print or Type Title)

# EXHIBIT B

# Contract Assignment



APP ID: _____

## CONTRACT ASSIGNMENT

For value received, this assignment is attached to and expressly made part of a motor vehicle sale by and between:

_____ (as Dealer/Seller) of _____ (City, State) and

_____ (Buyer/Buyers) of _____ (City, State)

dated _____ securing the vehicle described in the Retail Installment Contract (the "Contract")

with VIN # _____

Dealer/Seller hereby expressly sells, assigns, and transfers all rights, title and interest to said Contract to Capital One Auto Finance ("COAF"). This includes any security interest in the motor vehicle purchased by the terms of the Contract and any and all accessions, attachments, accessories and equipment (together the "Property") and any proceeds of the Property, and all rights, title and interest to any insurance policies or insurance proceeds purchased, endorsed, or obtained under the terms of the Contract to COAF, its successors and assigns.

Except as specifically provided in the Dealer Agreement between Dealer and COAF, the sale, transfer and assignment of the Contract shall be Without Recourse.

This assignment supersedes any assignment to another party that may appear on the Contract and is made subject to the terms of the Dealer Agreement between Dealer and COAF.

Dealer/Seller (Signature) _____

Date _____



8058 Dominion Parkway, Plano, TX 75024

Phone 800-227-3863 or 469-241-7000 · Fax 888-722-5186 · www.capitaloneauto.com
© 2023 Capital One and Capital One Auto Finance are federally registered trademarks. All rights reserved.

# EXHIBIT C

**GAP ADDENDUM**

The **Addendum** is between the **Customer/Borrower** (You or Your) and the **Dealer/Creditor** (We, Us, or Our) or if the **Financing Contract** is assigned with the assignee.

| Customer/Borrower | | | Address | |
|---|---|---|---|---|
| City | State | Zip | Customer Phone # | |

| Dealer/Creditor | | Dealer / Account # | Financial Institution / Lender | | |
|---|---|---|---|---|---|
| Address | | | Address | | |
| City | State | Zip | City | State | Zip |

| Year | Make | | Model | | Charge for Addendum | APR % | Term of Addendum |
|---|---|---|---|---|---|---|---|
| VIN | | | | ___ New ___ Used | MSRP / NADA | Amount Financed | Financing Contract Inception Date |

## PROGRAM LIMITS

| Maximum AFVR: 150% MSRP/NADA | Maximum Term: 84 Months | Maximum Limit of Coverage: $50,000 | Maximum Amount Financed Limit: $100,000 | Finance Instrument ___ Loan  ___ Installment Sales Contract |
|---|---|---|---|---|

This **Addendum** amends the **Financing Contract**. In the event of a **Constructive Total Loss** of the **Collateral**, we hereby agree to waive our rights against you for the amount due under a **Qualifying Loss**. You will remain responsible for any past due amounts, payment extensions, or any items listed in EXCLUSIONS. This **Addendum** will follow the **Financing Contract** with no subrogation rights against the **Customer/Borrower**, if the **Financing Contract** is sold or assigned by us.

Although not required to do so, you elect to purchase this **Addendum** for an additional charge which is shown above. You may as an alternative to purchasing this **Addendum**, be able to purchase a similar product from a company of your choice. **This GAP Program is not insurance, does not take the place of insurance on the Collateral and does not afford collision, comprehensive, or any other form of automobile insurance coverage.** You are responsible for all communications with your Primary Carrier including notice and claims. If you purchase this **Addendum** from us, you understand that we may retain all or a portion of the charge paid by you.

ENROLLMENT IS AVAILABLE ONLY AT THE TIME THE **FINANCING CONTRACT** IS ORIGINALLY EXECUTED. **BY YOUR SIGNATURE BELOW, YOU ACKNOWLEDGE AND AGREE THAT YOUR ACCEPTANCE OF THIS ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT THE CREDIT TERMS, AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE COLLATERAL.**

The coverage under this **Addendum** may decrease over the term of your **Financing Contract**. You should carefully read the front and back of this **Addendum** for additional information on conditions, limitations and exclusions that could prevent you from receiving the amount due under a **Qualifying Loss** attributed to a **Constructive Total Loss**.

**YOUR RIGHT TO CANCEL**: You have the unconditional right to cancel this optional **Addendum** for a refund/credit of the unearned portion of the charge for this **Addendum** at any time, provided the **Collateral** has not experienced a **Constructive Total Loss** in which a **Qualifying Loss** benefit has been approved. If you cancel within 30 days of the **Addendum** purchase, you will receive a full refund/credit of the **Addendum** cost, provided no loss has occurred. After 30 days, you will receive a refund/credit of the **Addendum** cost calculated by the Pro Rata refund method, or by the refund method as may be required by state or federal law, less a $50.00 cancellation fee, where such cancellation fee is permitted by law. To cancel this **Addendum** and request a refund/credit, you must contact the **Dealer/Creditor**, in writing, at the address shown above. Any refund/credit due you will first be issued to the **Dealer/Creditor** and applied to any amount owed still owed to the **Dealer/Creditor** under the finance agreement. If the refund/credit is not received within 60 days of notice of cancellation, contact the Administrator shown below.
In order to receive any refund due in the event of the early termination of the finance agreement, You, in accordance with the terms of this **Addendum**, must provide a written request to cancel to the **Dealer/Creditor**, Administrator, or other such party, within ninety (90) days after the occurrence of the event terminating the finance agreement.

By your signature below, you acknowledge you have read and understand this **Addendum** and its CONDITIONS and no other verbal representations have been made to you that differ from these written provisions and that this Addendum is not an insurance policy or part of an insurance policy. You authorize release of financing contract or any other information required for processing this addendum or processing of a loss.

| _____ | | _____ | |
|---|---|---|---|
| Customer/Borrower Signature | Date | Dealer/Creditor Signature | Date |
| _____ | | _____ | |
| Co-Customer/Borrower Signature | Date | Title | |

## Al firmar este addendum, usted reconoce que comprende inglés suficientemente para comprender este addendum en su totalidad. O, le an enviado una copia de este addendum en español.

A **Qualifying Loss** must be reported and required documentation provided to the Administrator within 180 days from the **Settlement Date**. No amount will be waived for any **Qualifying Loss** where all required documentation is not provided within 180 days. In the event there is no **Primary Insurance**, the Customer/Borrower has 180 days from the **Date of Loss** to report a **Qualifying Loss** and provide all required documentation. A **Qualifying Loss** where a benefit has been provided will cause this **Addendum** to terminate and be fully earned and not subject to any cancellation refund.

**REPORT A QUALIFYING LOSS TO OUR ADMINISTRATOR:**
**PARTNERS ALLIANCE CORPORATION – PO BOX 1630 POWAY CA 92074 – 800 970 3302**
**Qualifying Loss Documentation Fax Number: 858-513-9224**

This **Addendum** has no coverage to any **Collateral** where the amount financed is greater than the Maximum Amount Financed Limit as stated above.

The amount waived for **Financing Contracts** with terms greater than the Maximum Term stated above will be based on a net payoff calculated using the Maximum Term stated above.

### CONDITIONS
1. Concealment, Misrepresentation and Fraud: This Addendum may not cover a qualifying loss if you, the Customer/Borrower intentionally conceal or misrepresent any material fact relating to this Addendum.
2. You are responsible for making at least the minimum payment under the terms of the **Financing Contract** for each payment due scheduled after the **Date of Loss** until the request for a **Qualifying Loss** has been processed.
3. Should you not have collectible automobile physical damage insurance on the **Date of Loss**, it is your responsibility to advise the Administrator within 180 days from the **Date of Loss** and have the **Collateral** available for inspection by the Administrator (inspection will be paid by the Administrator). The Administrator will calculate the **Actual Cash Value** of the **Collateral** immediately prior to the loss.
4. This coverage applies only to a **Qualifying Loss** sustained while the **Collateral** is within the United States of America (USA), its territories or possessions, Canada, or being transported between any parts thereof.
5. This **Addendum** will provide coverage to the **Collateral** where the Amount Financed to Value Ratio (AFVR) exceeds the Maximum AFVR stated above however, the **Addendum** will not cover the amount exceeding the Maximum AFVR.
6. This **Addendum** will provide coverage to the **Collateral** where the first payment is made more than 45 days from the **Financing Contract** inception date, however, the **Net Payoff** will be calculated as if the first payment was 45 days from the **Financing Contract** inception date.
7. The **Net Payoff** will be recalculated using the original **Financing Contract** terms if it is subject to any of the limitations in the definition of **Net Payoff**.

**QUALIFYING LOSS PROCEDURES:** In the event of a **Constructive Total Loss**, you must notify and provide the following to the Administrator.  Please submit: 1) a copy of the **Financing Contract** and a copy of this signed **Addendum**, 2) a copy of the **Financing Contract** history and pay-off as of the **Date of Loss**, 3) a legible copy of the police report, which must include confirmation of the **Collateral** shown on this **Addendum**.  If a police report is not available, and the cause of loss to **Collateral** was NOT due to theft, a signed and notarized brief description of the loss (including confirmation of the **Collateral**) will be acceptable, 4) a copy of the settlement check, **Collateral** valuation report and total loss breakdown, and Declarations Page issued by the **Primary Carrier**,  (provided **Primary Carrier** coverage is in effect on the **Date of Loss**), 5) a copy of the Bill of Sale (aka Buyer's Order, Purchase Agreement, etc.) as well as the manufacturer's invoice or window sticker (if the vehicle was purchased new).  If the vehicle was purchased used, a copy of the bookout sheet, 6) verification of any other refundable amounts, 7) any additional or reasonable documentation requested by the Administrator.  The Administrator will not be able to obtain this information for you.

**MITIGATION OF LOSS**
You should do all things reasonable and practical to avoid any loss covered under this **Addendum** and to protect the **Collateral** from any further loss.  You shall take reasonable measures to ensure that the maximum amount of **Actual Cash Value** of the **Collateral** is paid by your **Primary Carrier**.

**TERMINATION OF ADDENDUM**
This **Addendum** will terminate on the earlier date that one of the following events occurs:  1. the date your **Financing Contract** is scheduled to terminate; 2. upon payment in full of the **Financing Contract**; 3. expiration of any redemption period following the repossession or surrender of the **Collateral**; 4.  in the event of a **Constructive Total Loss** or theft of the **Collateral**; or 5. the date the **Financing Contract** is prepaid or the **Financing Contract** is refinanced.

**DEFINITIONS**
**Actual Cash Value (ACV)** means the retail value of the **Collateral** on the **Date of Loss**, as listed in a national or regional guide, such as National Automobile Dealers Association (NADA) or an equivalent national or regional guide for the territory in which the **Collateral** is principally garaged.
**Collateral** is the vehicle described in the schedule of this **Addendum** and described in the **Financing Contract**.
**Commercial Purposes** means the use of the **Collateral** as a taxicab, public omnibus, jitney or sightseeing conveyance, or for carrying goods or passengers for compensation or hire or the **Collateral** exceeds 12,500 lbs (GVW).
**Constructive Total Loss** means a direct and accidental loss of or damage to the **Collateral**, which meets one of these criteria: 1.) the **Customer/Borrower's Primary Carrier** declares the **Collateral** a total loss; or 2.) if there is no primary insurance coverage, the total cost to repair the **Collateral** is greater than or equal to the **Actual Cash Value** of the **Collateral** immediately prior to the loss or the **Collateral** is not recovered more than 30 days after a theft.  In the case there is no primary insurance coverage, the **Collateral** must be available for the Administrator's inspection (inspection will be paid by the Administrator) to determine if the **Collateral** is a total loss, except in the case of unrecovered theft.
**Customer/Borrower** - The natural person(s) or business named in the **Financing Contract** purchasing this **Addendum** from the **Dealer/Creditor**.
**Date of Loss** means the date on which the **Collateral** is reported stolen or incurs physical damage that is severe enough to constitute a **Constructive Total Loss**.
**Financing Contract** means the contract which represents the financing instrument for the purchase of the **Collateral**, which sets forth the terms, conditions, inception date, and expiration date of the financing instrument.
**Financial Institution/Lender** means the entity to which your **Financing Contrac**t is sold, assigned or transferred.
**Loan** means **Financing Contract**.
**Net Payoff** means the amount, as of the **Date of Loss**, represented by the portion of your unpaid balance according to the original payment schedule of the **Financing Contract** that is secured by the **Collateral**, subject to the following limitations: the amount does not include any unearned finance charges or loan/financing charges; past due payments/skipped payments as described in the **Financing Contract**; late charges; uncollected service finance charges; refundable prepaid taxes and fees; disposition fees; termination fees; penalty fees; the recoverable portion of finance service charges or the recoverable portion of financed amounts for unearned insurance premiums or refundable charges (including, but not limited to credit life, vehicle service coverages/warranties and guaranteed automobile protection charges) that are owed by you on the **Date of Loss**; and amounts that are added to the financing instrument  balance after the inception date of the **Financing Contract**.
**Qualifying Loss** means the difference between the **Net Payoff** and the **Primary Carrier** settlement or in the event of no **Primary Carrier**, the **Net Payoff** and the **Actual Cash Value**. The **Qualifying Loss** will not exceed the Maximum Limit of Coverage as shown in the **Addendum** schedule.  If settlement by the **Primary Carrier** or the **Actual Cash Value** is greater than or equal to the outstanding balance, no **Qualifying Loss** will be afforded under this **Addendum**.  **Qualifying Loss** includes the amount of the physical damage deductible on the **Primary Carrier** policy up to $1,000.  In the event that there is no **Primary Carrier** coverage in effect on the **Date of Loss**, or if the **Primary Carrier** is declared insolvent, or if no proceeds are received from the **Primary Carrier** policy, or if proceeds are limited by the **Primary Carrier**, the **Addendum** will only cover the difference between the **Net Payoff** and the **Actual Cash Value** of the **Collateral** on the **Date of Loss**. If there is no **Primary Carrier**, the **Collateral** must be available for inspection by the Administrator (inspection will be paid by the Administrator) to determine if the **Collateral** is a **Constructive Total Loss**, except in the event of an unrecovered theft.
**Primary Carrier** means the insurance company selected by you prior to the **Date of Loss** that underwrites a policy of insurance providing physical damage coverage on the **Collateral** or the insurance company that provides liability coverage to any person who has caused the **Collateral** to incur a **Constructive Total Loss**.
**Settlement Date** means the date on which the **Primary Carrier** issues the settlement check for the **Collateral**
**Installment Sales Contract** means **Financing Contract**.

**EXCLUSIONS**
In addition to other provisions herein, this **Addendum** does not provide coverage for loss:
A.     occurring prior to the effective date of this **Addendum**.
B.     occurring prior to the **Financing Contract** inception date shown in the schedule.
C.     due to confiscation of the **Collateral** by a government body or public official.
D.     caused by theft, unless a police report is filed within 48 hours of discovery of the theft.
E.     resulting from the **Collateral** being operated, used, or maintained in any race, speed contest, or other contest.
F.     to the **Collateral** held as security under any wholesale, floor plan, field warehouse, or any type of financing made to a dealership or its employees.
G.     to the **Collateral**, if used at any time for **Commercial Purposes**.
H.     occurring after the **Collateral** has been repossessed by the **Financial Institution/Lender** or placed in their possession or in the possession of their employees or agents.
I.      to **Collateral** with a **Financing Contract** in which the Amount Financed for **Collateral** exceeds the Maximum Financed Limit shown on the front of this **Addendum** at the inception date of the **Financing Contract.**
J.     for any amounts deducted from the **Primary Carrier** settlement including but not limited to wear and tear, prior damage, unpaid insurance premiums, towing and storage, options not included in the **Primary Carrier** settlement, and any amounts resulting from exclusions in the **Primary Carrier** policy regardless of whether they are specifically excluded in this **Addendum**.
K.     to the following vehicles which are excluded from coverage: Aston Martin, Bentley, Daewoo, Ferrari, Lamborghini, Lotus, Maserati, Rolls Royce, and Yugo.
L.     attributable to other than the standard or optional equipment available from the manufacturer of the **Collateral**, including but not limited to: special
          carpeting, furniture, bars, audio, video, or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to
          overcome a physical handicap.  Factory approved conversion packages and dealer installed options usually included in used car value
          guidebooks are not excluded.
M.     to the **Collateral** with a salvage or rebuilt title at the time of sale or for which title has been changed or re-issued as salvage or rebuilt prior to the **Date of Loss**.
N.     resulting directly or indirectly from any dishonest, fraudulent, criminal, or illegal act, DUI or arising from an intentional act committed by you, a relative, or a household member or by any person authorized to drive your vehicle by any of the foregoing persons.
O.     from a **Financing Contract** that does not have uniform scheduled payments after the first payment is made and/or a **Financing Contract or Loan** that is self-financed.
P.     to any **Collateral** financed under a lease agreement/contract.
Q.     due to war, whether or not declared, invasion, civil war, insurrection, rebellion, or revolution.
R.     due to wear and tear, freezing, mechanical, or electrical breakdown or failure.

**STATE PROVISIONS**
**Colorado, Indiana, Louisiana, Maine, Missouri, New Mexico, South Carolina, Vermont, and Wisconsin**: The cancellation fee is not applicable.
**Illinois and New Hampshire**: Lease contracts are not covered under this Agreement.
**Arkansas, Florida, Georgia, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, North Carolina, North Dakota, Rhode Island, Tennessee, South Carolina, Utah, Virginia, Washington, and West Virginia**: In order to receive any refund due in the event of Your cancellation of the GAP Addendum or early termination of the finance agreement thirty-one (31) days or more from the Agreement Effective Date, You, in accordance with the terms of the GAP Addendum, must provide a written request to cancel to the Creditor/Lessor, administrator, or such other party, within ninety (90) days after Your decision to cancel the GAP addendum or the occurrence of the event terminating the finance agreement.
**Alabama**: The cost of this GAP Addendum is not regulated; the **Customer/Borrower** should determine whether the cost is reasonable in relation to the protection afforded by the GAP Addendum. If this Agreement is terminated as a result of the early termination of the finance or lease contract, a written request for a refund will not be required and You will be provided a refund, if applicable.
**Alaska**: No amount of the Physical Damage Insurance deductible is included in the calculation for **Cash Value**.
**Arkansas**: The cost of this GAP Addendum is not regulated; the **Customer/Borrower** should determine whether the cost is reasonable in relation to the protection afforded by the GAP Addendum.
**Colorado**: **You may wish to consult an insurance agent to determine whether similar coverage may be obtained and at what cost.  The GAP Protection benefits may decrease over the term of the finance or lease contract. You may cancel this Agreement for any or no reason within thirty (30) days after the GAP Addendum was purchased and receive a full refund of the GAP Addendum fee or premium so long as no loss or event covered by the GAP Addendum has occurred.** In the event that Your finance or lease contract is prepaid prior or maturity or the Vehicle is no longer in Your possession due to the **Creditor/Lessor's** lawful repossession and disposition of the Vehicle, and if no GAP claim has been made, the **Creditor/Lessor** will refund to You the unearned fee paid for the GAP Addendum using a pro-rata calculation, **unless the prepayment or lawful repossession and disposition takes place within the first thirty (30) days after the GAP Addendum was purchased and no GAP claim has been made, in which case the Creditor/Lessor will refund the full GAP Addendum fee or premium**. In the event of a Total Loss, You shall have ninety (90) days after the loss settlement from any property damage insurance or from the date the **Creditor/Lessor** notifies You of any deficiency balance owed, whichever is later, to file a claim for GAP Protection benefits. If this transaction contains a fee or premium for GAP Protection, all holders and assignees of this consumer credit transaction are subject to all claims and defenses which the consumer could assert against the original creditor resulting from the consumer's purchase of GAP Protection. The third sentence of the first paragraph of this Addendum is deleted in its entirety. The definition of **Net Payoff** is deleted in its entirety and replaced with the following definition: "**Net Payoff** means, subject to the limitations set forth below, the amount due Us as of the **Date of Loss**. Notwithstanding any provision of Your finance or lease contract, Net Payoff shall not include any amounts previously owed for unpaid installments, legally permitted delinquency fees, fees for the return or dishonor of checks or other instruments tendered as payment, premiums for creditor-imposed property damage insurance, and deferral fees."

**Georgia:** The effective date of any cancellation may be no earlier than ninety (90) days prior to the date such written notice is received by the Creditor/Lessor.

**Illinois:** The seller, holder, or any of their affiliates may receive something of value in connection with the purchase of this GAP Addendum.

**Indiana:** The GAP Addendum is not available for purchase in the amount financed (not including the cost of the GAP Addendum, the cost of any credit insurance, and the cost of any warranties or service agreements) is less than eighty percent (80%) of the manufacturer's suggested retail price (MSRP), in the case of a new motor vehicle, or the National Automobile Dealers Association (NADA) average retail value, in the case of a used motor vehicle. If this addendum terminates due to prepayment of the finance or lease contract, the **Creditor/Lessor** is responsible for issuing any refund to You that may be due according to the cancellation provisions of this Addendum. You are not required to request a refund.

**Kansas:** GAP coverage is not required by the creditor. **GAP coverage may not cancel or waive the entire amount owing at the time of loss.** This GAP Addendum remains a part of the finance agreement upon the assignment, sale, or transfer of such finance agreement by the creditor. **For any claims for GAP coverage, please contact the GAP Administrator: Partners Alliance Corporation, PO Box 1630, Poway CA 92074, phone (800) 970-3302, email claims@partnersalliancecorp.com. Kansas consumers with questions or complaints may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603, website http://www.osbckansas.org**

**Louisiana:** The first sentence of the definition of **Cash Value** is amended to state, "**Cash Value** means the value of the Vehicle on the Date of Total Loss, prior to its physical damage or theft, as determined by Your Physical Damage Insurer, plus any amount subtracted from that value due to pre-existing damage, unpaid insurance premiums, salvage, or towing and storage, less Your Physical Damage Insurance deductible up to $1,000, if applicable."

**Maryland:** The third sentence of the first paragraph of this Addendum is deleted in its entirety. The first sentence of the definition of **Cash Value** is amended to state, "**Cash Value** means the proceeds of any insurance maintained on the Vehicle." The definition of **Net Payoff** is amended to state, "**Net Payoff** means, subject to the limitations set forth below, the amount due Us as of the Date of Total Loss.  Notwithstanding any provision of Your finance or lease contract, Net Payoff shall not include any delinquent payments, past due charges, late payment charges, unearned interest, unearned rental payments, and the portion of any financed taxes or charges, including charges for credit life insurance, credit health insurance, credit involuntary unemployment benefit insurance, and mechanical repair insurance, actually refunded to the buyer or credited as a reduction to the loan balance." Exclusion J is deleted in its entirety.

**Minnesota:** # THE GAP WAIVER IS OPTIONAL. YOU DO NOT HAVE TO PURCHASE THIS PRODUCT IN ORDER TO BUY OR LEASE THIS MOTOR VEHICLE. YOU ALSO HAVE A LIMITED RIGHT TO CANCEL.

**Nebraska:** This GAP Addendum is not regulated by the Nebraska Department of Insurance. This GAP Addendum remains a part of the finance agreement upon the assignment, sale, or transfer of such finance agreement by the creditor or the creditor's designee.

**New Jersey:** The Financial Institution/Lender shall provide, or cause the Administrator or Creditor/Lessor to provide, You any refund due pursuant to this Addendum within 60 days of the event terminating the finance or lease contract without requiring You to request a refund, or within 60 days of the receipt of Your cancellation of the GAP Addendum.

**NEVADA:** A guaranteed asset protection waiver is not a policy of liability or casualty insurance and does not satisfy the requirement to maintain liability insurance pursuant to NRS 485.185; and failure to make a timely payment under the terms of the finance agreement may void the guaranteed asset protection waiver.

**Oregon:** If this Agreement is terminated as a result of the termination of the finance or lease contract, a written request for a refund will not be required and You will be provided a refund, if applicable.  If You choose to cancel this GAP Addendum, You must submit a written request for a refund to the Program Administrator at the address shown above within 90 days after cancellation.

**South Carolina: THIS GAP WAIVER IS NOT REQUIRED TO OBTAIN CREDIT, NOR TO OBTAIN CERTAIN TERMS OF CREDIT OR TO PURCHASE THE RELATED MOTOR VEHICLE. THIS GAP WAVIER WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST.**

**Tennessee:** The cost of this Agreement is not regulated and you have the responsibility to determine whether the cost of this Agreement is reasonable in relation to the coverage afforded by this Agreement.

**Utah:** The Addendum is subject to limited regulation by the Utah Insurance Commissioner.  Complaints regarding the GAP Addendum may be submitted to the offices of the Utah Insurance Commissioner.

**Vermont:** The **Creditor/Lessor** must assign, sell or transfer, within 15 business days, the finance or lease contract to a **Financial Institution/Lender** as defined in subdivision 1110(32) of Title 8 or a credit union or entity licensed under subdivision 2201(a)(1) or (3) of Title 8 or this Addendum is void and you will receive a full refund of the charges of the Addendum.

**Washington:** 1. Any refund of purchase price for an Addendum that was included in the financing of the **Vehicle** may be applied by the creditor as a reduction of the overall amount owed under the finance or lease contract, rather than applying the refund strictly to the purchase price of the Addendum. 2. The Addendum is not credit insurance, nor does it eliminate your obligation to insure the **Vehicle** as provided by laws of this state. Purchasing an Addendum does not eliminate your rights and obligations under the vendor single-interest and collateral protection coverage laws of this state.  3.  This Addendum shall be void if any material fact(s) have been intentionally concealed or misrepresented, or in the case of fraud. If this Addendum is voided for the aforementioned reasons, the Addendum will terminate and any refund due will be provided as determined under Section 5 - CANCELLATION.  4.  This GAP Addendum remains a part of the finance agreement upon the assignment, sale, or transfer of the finance agreement by the creditor.

**West Virginia:** To activate GAP Protection benefits under the terms and conditions of the GAP Addendum, follow the instructions outlined in **SECTION 4 – NOTIFICATION OF TOTAL LOSS**. Once activation of GAP Protection benefits has been initiated, and until such time as the request for a benefit under the GAP Addendum is resolved, the GAP Addendum shall not be terminated or cancelled, nor shall a request for a benefit under the GAP Addendum be denied, by the creditor, administrator, or another designated party, solely due to the borrower's failure to make monthly payments owed for the GAP Addendum purchase price.

**Wisconsin:** The **Your Rights To Cancel This Agreement** section is amended as follows: In the second and third sentences, the language, "To cancel this Agreement, You must submit a written request to the Program Administrator at the address shown above." is deleted in its entirety. The fourth sentence is amended to state, "If this Agreement is cancelled or terminated within thirty (30) days of the Agreement Effective Date, We will refund the entire Agreement Purchase Price plus the amount of applicable finance charges, if no benefit has been provided under this Agreement." This Agreement terminates no later than the earliest of the following events: cancellation by You, payment in full of the finance or lease contract, expiration of any redemption period after a repossession or surrender of the Vehicle, or upon Total Loss of the vehicle after the Creditor/Lessor has waived the GAP amount or it is determined that no GAP amount exists. Upon cancellation or termination of this Agreement, the Creditor/Lessor shall make an appropriate refund or credit of the GAP Addendum charge or shall cause to be made an appropriate refund or credit by instructing in writing the appropriate party to make the refund or credit.

Page 3 of 3

PAC 1000 (150)          Administrator: White   ● Dealer/Creditor: Yellow   ● Customer/Borrower: Pink   ● Financial Institution/Lender: Gold          03/21